# ORIGINAL

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES-GENERAL

_____ Priority
_____ Send
_____ Clsd
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

**Case No.:** CV 04-9608-GHK(CTx)　　　　　　**Date:** December 7, 2005
**Title:  Guillory v. City of Los Angeles et al.**

========================================================================

**DOCKET ENTRY**

========================================================================

ENTERED
CLERK, U.S. DISTRICT COURT
DEC 9 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

**PRESENT:  Hon. George H. King, United States District Judge**

Beatrice Herrera　　　　　　　　　None
Deputy Clerk　　　　　　　　　　Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFF:**　　　**ATTORNEYS PRESENT FOR DEFENDANTS:**

None　　　　　　　　　　　　　None

**PROCEEDINGS:**　　**Motions for Summary Judgment; Application to File Under Seal;
Requests for Judicial Notice; Plaintiff's *Ex Parte* Application Re:
[Proposed] Rule 15(a) Motion to Amend Complaint; Plaintiff's
Motion to Amend Complaint to Add Oscar Munoz as Defendant**

This matter is before the Court on the above-entitled motions.  These motions are ·
appropriate for resolution without oral argument.  *See* Federal Rule of Civil Procedure 78; Local
Rule 7-15.  After carefully considering all pertinent papers, we rule as follows.

The parties are familiar with the facts in the current action.  Thus, we will not repeat any
facts except as necessary.

## I.　　Introduction

This case arises from a 1993 drive-by shooting, which resulted in the conviction of
Lavont Guillory on one court of  homicide and two counts of attempted homicide.  He was
sentenced to forty-two years and eight months to life in prison.  In 2002, DNA testing revealed
that blood found in one of the vehicles used in the shooting could not have been Guillory's.
Charges against him were dismissed on November 24, 2003.

On November 23, 2004, Guillory ("Plaintiff") filed a complaint against the City of Los
Angeles ("the City"), Mark Arneson ("Arneson"), Daryl Gates, and Doe Defendants 1 through

**THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).**

10. On January 5, 2005, we approved the parties' stipulation to dismiss Daryl Gates as a defendant.[1]

Before us are two motions for summary judgment, filed September 8, 2005. Defendant Arneson seeks summary judgment as to the entire action or, in the alternative, partial summary judgment as to the first, second, third and fourth claims. The City joins in his motion. The City moves for summary judgment on the sixth and eighth claims. Plaintiff filed Oppositions to both motions on September 19, 2005, and a Supplemental Opposition to Arneson's Motion on October, 11, 2005. The City filed a Reply on October 13, 2005, and Arneson filed a Reply and an Objection to Plaintiff's Supplemental Opposition, requesting that it be stricken, on October 14, 2005. In addition, on September 19, 2005, Plaintiff brought an ex parte application requesting leave to file on shortened notice a Rule 15(a) Notice of Motion and Motion to Amend the Complaint to Add Oscar Munoz as a Defendant. The City, joined by Defendant Arneson, opposed both the ex parte application and the motion to amend.

On October 25, 2005, Plaintiff filed a Surreply to Defendant Arneson's Reply, and on October 27, 2005, Defendant Arneson filed an Objection to the Surreply, requesting that it be stricken. The parties have also filed requests for judicial notice, evidentiary objections, and a stipulation and joint application to allow plaintiff to file oppositions to defendants' motions under seal.

## II.   Motions for Summary Judgment

### A.   Legal Standards

#### 1. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial responsibility to point to the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party has the burden of proof at trial, the moving party meets its burden by either producing evidence negating an essential element of the non-moving party's claim or defense, or showing that the non-moving party does not have enough evidence of an essential element to

---

[1] Because Plaintiff's fifth and seventh claims were asserted against Daryl Gates only, we do not address those claims.

carry its ultimate burden of persuasion at trial. *Id.* at 325; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden then shifts to the non-moving party to present specific facts showing that a genuine issue of fact remains for trial. *See* Fed. R. Civ. P. 56(e); *British Airways v. Boeing*, 585 F.2d 946, 950-52 (9th Cir. 1978). The party opposing a properly made and supported motion for summary judgment may not rest upon the mere allegations or denials in her pleadings. *See* Fed. R. Civ. P. 56(e). Rather the party must, either by affidavits or as otherwise provided by the rule, set forth specific facts showing that there is a genuine issue of material fact. *Id.; see also* Local Rule 56-3 ("Court will assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' and (b) controverted by declaration or other written evidence filed in opposition to the motion."). A mere "scintilla" of evidence supporting the non-moving party's position will not suffice. *Liberty Lobby, Inc.*, 477 U.S. at 252. There must be enough evidence for a jury to reasonably find for the non-moving party. *Id.* Moreover, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

We view all facts and draw all inferences in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, we must accept the plaintiff's view of all material disputed facts. *LaLonde v. County of Riverside*, 204 F.3d 947, 954 (2000). If, however, the nonmoving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Liberty Lobby, Inc.*, 477 U.S. at 249-50.

### 2.    42 U.S.C. § 1983

Five of Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983. Under 42 U.S.C. § 1983, a plaintiff may bring an action to redress violations of his "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under color of state law. Hence a plaintiff bringing a Section 1983 claim must identify a recognized federal right and establish that the defendant has caused it to be violated. The Ninth Circuit has articulated the causation standard:

> A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made. Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causation can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a

3

series of acts by others which the actor knows or reasonably should
know would cause others to inflict the constitutional injury.

*Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

### 3.      Qualified Immunity

Under *Pierson v. Ray*, 386 U.S. 547 (1967), police officers have a qualified immunity
under section 1983. They are shielded from liability if they reasonably believe in good faith that
their actions are constitutional. *See Pierson*, 386 U.S. at 557. The reasonableness of that belief
depends upon the extent to which the legal rules pertaining to the officers' conduct were clearly
established when the officers acted. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus for
qualified immunity to be pierced, the unlawfulness of the challenged conduct must have been
"apparent" at the time it was undertaken. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

### B.      Plaintiff's First Claim: Violation of Plaintiff's Substantive and Procedural Due Process Rights Through Malicious Prosecution/False Imprisonment (42 U.S.C. § 1983)

In the Ninth Circuit, a claim of malicious prosecution generally is not cognizable under 42
U.S.C. § 1983 if process is available within the state judicial system to provide a remedy. *Usher v.
Los Angeles*, 828 F. 2d 556, 561-62 (9th Cir. 1987) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1031
(9th Cir. 1985) (en banc); *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981)). However, "an
exception exists to the general rule when a malicious prosecution is conducted with the intent to
deprive a person of equal protection of the laws or is otherwise intended to subject a person to a
denial of constitutional rights." *Bretz*, 773 F.2d at 1031; *Cline*, 661 F.2d at 112. Of relevance
here, the Circuit has recognized "a clearly established constitutional due process right not to be
subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the
government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (noting that the right
may not have previously been expressly articulated, but that does not mean that there is no such
right and citing *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001) for the proposition that
"[p]recedent directly on point is not necessary to demonstrate that a right is clearly established").
It has also held that state actors who are aware of exculpatory evidence but suppress it may be
liable for malicious prosecution under Section 1983. *Haupt v. Dillard,* 17 F.3d 285, 290 n.5 (9th
Cir. 1994).

The Ninth Circuit has incorporated the relevant elements of the common law tort of
malicious prosecution into its Section 1983 analysis. In California, the elements of malicious
prosecution are (1) the initiation of criminal prosecution, (2) malicious motivation, and (3) lack of
probable cause. *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987). In order to
prevail on a Section 1983 claim of malicious prosecution, then, a plaintiff "must show that the
defendants prosecuted [him] with malice and without probable cause, and that they did so for the
purpose of denying [him] equal protection or another specific constitutional right." *Freeman v.*

*City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Malicious prosecution claims are not limited to suits against prosecutors, but may be brought, as here, against other persons who have wrongfully caused charges to be filed. *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002).

As discussed above, under the doctrine of qualified immunity, police officers are shielded from liability under Section 1983 if it would not have been clear to a reasonable officer that his or her conduct was unlawful in the particular circumstances confronted. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Thus it is settled that police officers charged with malicious prosecution or false arrest leading to false imprisonment are immune from liability if a reasonable officer could have thought there was probable cause to support the arrest warrant. *Anderson v. Creighton*, 483 U.S. at 638 (*citing Malloy v. Briggs*, 475 U.S. 335, 344-45 (1986)). *See also Pierson*, 386 U.S. at 555, 557. To recover under Section 1983, then, "a plaintiff must clear two hurdles: probable cause must be shown not to have existed; the officers must be shown not to have reasonably believed in good faith that probable cause did exist." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981).

As the Circuit has incorporated the common law elements of malicious prosecution, federal courts look to California law to determine the legal effect of the action of the state court. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (2004) (*citing Usher*, 828 F.2d at 562). In California, it is well-settled that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing is *prima facie*–but not conclusive–evidence of probable cause. *See Awabdy*, 368 F.3d at 1067 (*citing, inter alia, Holliday v. Holliday*, 123 Cal. 26 (1898); *Diemer v. Herber*, 75 Cal. 287 (1888); *Scannell v. County of Riverside*, 152 Cal. App. 3d 596 (1984)). However, a plaintiff must be given an opportunity to rebut the *prima facie* showing of probable cause. *Id.* Such rebuttal may be achieved by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct. *Id.* When a plaintiff has had a full and fair opportunity to challenge a probable cause determination during the course of the criminal proceedings–such as at the preliminary hearing–he may be collaterally estopped from relitigating probable cause in a subsequent Section 1983 claim. *See Haupt v. Dillard*, 17 F.3d 285, 289 (9th Cir. 1994). However, the doctrine of collateral estoppel does not apply when the decision to hold a defendant to answer following a preliminary hearing was allegedly made on the basis of fabricated evidence or resulted from other wrongful conduct by state or local officials. *Id.* at 290 n.5. Plaintiff Guillory's allegations fall squarely within this exception.

Defendant Arneson argues that his liability under Section 1983 is circumscribed by the presumption of prosecutorial independence. That is, the decision to file a criminal complaint is presumed to have resulted from an independent determination by the prosecutor. *Smiddy v. Varney*, 665 F.2d 261, 266-68 (9th Cir. 1981). But as with the doctrine of collateral estoppel, the presumption of prosecutorial independence does not bar a Section 1983 claim against officials alleged to have knowingly provided the prosecutor with misinformation, concealed exculpatory

5

evidence or otherwise engaged in wrong or bad faith conduct that was instrumental in prompting the initiation of criminal proceedings. *Id.* at 266-67; *see also Awabdy,* 368 F.3d at 1067.

In moving for summary judgment, Defendant Arneson produces as evidence of probable cause for Guillory's arrest Lakeisha Thomas's July 6, 1993, statement and photo identification of "Bang" as the driver of the Astrovan involved in the drive-by shooting. Def. Mark Arneson's App. of Exs. in Supp. of Mot. for Summ. J. (hereinafter "Arneson Ex."), Ex. C. Defendant Arneson additionally provides a transcript of Guillory's preliminary hearing, at which the Plaintiff was identified by both Lakeisha Thomas and Myeisha Bridges as the driver of the van. Arneson Ex. H at 37:1-9 and 130:6-27.

In order to rebut this evidence, the Plaintiff must produce admissible evidence showing that there is a genuine issue of material fact as to whether Arneson fabricated evidence, withheld exculpatory evidence, suborned perjury, or otherwise acted in bad faith with the intent of violating the Plaintiff's rights. To support a claim of fabricated evidence, the Plaintiff must, at a minimum, adduce evidence that supports at least one of two propositions: (1) Defendant Arneson continued his investigation despite the fact that he knew or should have known that Plaintiff was innocent; or (2) Defendant Arneson used investigative techniques that were so coercive and abusive that he knew or should have known that those techniques would yield false information. *See Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001); *see also Cunningham v. City of Wentchee,* 345 F.3d 802, 811 (9th Cir. 2003).

In support of his claim, Plaintiff has submitted his own declaration, in which he states:

> 3. On the date of my arrest, July 13, 1993, when Detective Arneson attempted to interrogate me, I asserted my constitutional right to speak to an attorney.
> 4. Detective Arneson terminated the interrogation but then told me that he knew I had nothing to do with the murder. He said that he believed I knew who had committed the murder and that unless I told him, he would pin the murder on me.

Decl. of Lavont Guillory, attached as Ex. D to Decl. of Hermez Moreno and Attached Exs. in Opp'n. to Def. Arneson's Mot. for Summ. J. (hereinafter "Moreno Decl."), ¶¶ 3-4. Construing this evidence in the light most favorable to the non-moving party, as we must on a motion for summary judgment, we conclude that it supports the proposition that Arneson continued to investigate Guillory knowing he was innocent. It therefore raises a triable issue of fact as to Defendant Arneson's fabrication of evidence and, consequently, to the existence of probable cause for Plaintiff's arrest and prosecution. In particular, Guillory's declaration raises a triable issue as to whether the identifications by Lakeisha Thomas and Myeisha Bridges of Guillory as one of the participants in the shooting were coerced by Arneson in order to carry out his alleged goal of "pining" the murder on Guillory despite knowing that Guillory was innocent.

As Plaintiff has demonstrated the existence of a triable issue as to his claim of malicious prosecution, we deny Defendant Arenson's motion for summary judgment on this claim.

**C.      Plaintiff's Second Claim: Violation of Plaintiff's Substantive Due Process Rights Through Knowing and Malicious Suppression of Exculpatory and Impeaching Evidence.**

The Supreme Court has held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. at 87. The duty to disclose was subsequently extended to apply even when there has been no request by the accused. *United States v. Agurs,* 427 U.S. 97, 107 (1976). It encompasses impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Moreover, the rule encompasses evidence "known only to police investigators and not to the prosecutor." *Strickler v. Greene*, 527 U.S. 263, 280-281 (1999).

Relying on this body of law, Plaintiff claims that his substantive due process rights were violated by Arneson's knowing and malicious suppression of exculpatory and impeaching evidence. He further maintains that "the officers involved in Plaintiff's arrest were, prior to his arrest, involved in a pattern and practice of false attributions of inculpatory evidence on people" and that "these officers failed to turn over to the prosecution and Plaintiff's criminal defense team the fact that they engaged in the type of behavior mentioned above." Compl., ¶¶ 90-91.

In bringing this claim, Plaintiff fails to distinguish between *Brady* violations asserted in the context of a criminal or habeas proceeding and *Brady* violations asserted as the basis of a Section 1983 claim. Neither of the cases cited by Plaintiff in support of his claim that investigating police officers have a duty to disclose under *Brady* involves the civil liability of investigating officers. *See United States v. Endicott*, 869 F.2d 452 (9th Cir. 1989) (appeal of a criminal conviction); *Barbee v. Warden, Maryland Penitentiary,* 331 F.2d 842 (4th Cir. 1964) (appeal of denial of a habeas petition). We know of no citable authority holding police officers liable under Section 1983 for failure to disclose exculpatory or impeaching evidence outside the context of a Section 1983 claim for malicious prosecution, and Plaintiff has cited to no such authority.

Therefore we grant summary judgment to Defendant Arneson on Plaintiff's second claim.

**D.      Plaintiff's Third Claim: Violation of Plaintiff's Constitutional Right to be Free of Unreasonable Searches and Seizures**

Generally, a police officer is not liable under Section 1983 when he arrests a suspect with probable cause. *Pierson,* 386 U.S. at 555. Defendant Arneson argues that as probable cause existed for Plaintiff's arrest and the search of his home, there is no triable issue of fact in regard to Plaintiff's third claim. As we have discussed above, Plaintiff has shown a genuine issue of

material fact as to whether Defendant Arneson fabricated evidence that constitutes the probable cause for Plaintiff's arrest. We therefore deny summary judgment on Plaintiff's third claim.

**E.     Plaintiff's Fourth Claim: Failure to Intervene to Prevent Civil Rights Violations**

In a line of civil cases, courts have held that police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen. *See, e.g., O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Bruner v. Dunaway*, 684 F.2d 422, 425-26 (6th Cir. 1982), *cert. denied*, 459 U.S. 1171 (1983); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972). However, Defendant Arneson has pointed to a lack of evidence establishing misconduct in violation of Plaintiff's constitutional rights in his presence and nonfeasance on his part in the face of a duty to intercede. In response, Plaintiff has not identified any evidence that raises a triable issue of fact. Therefore, we grant summary judgment to Defendant Arneson on Plaintiff's fourth claim.

**F.     Plaintiff's Sixth Claim: Municipal Liability for Violation of Constitutional Rights.**

A plaintiff alleging municipal liability under Section 1983 must first establish that he suffered a violation of a recognized federal right. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that there is no § 1983 liability where an individual plaintiff suffers no constitutional harm, even if there is a policy depriving others of constitutional rights); *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996) (same).

Second, a plaintiff must establish that the municipality is liable for the constitutional injury. A plaintiff may do so in one of three ways.

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346-1347 (9th Cir. 1992) (internal citations omitted).

The City has offered unrebutted evidence that the Los Angeles Police Department's official policy requires that all actions be based on legal justification. *See* Def. City of Los Angeles' [Proposed] Statement of Uncontroverted Facts and Conclusions of Law, Ex. A. It has also offered unrebutted evidence that, under law, the "final policy makers" for the LAPD are the Police Chief and the Board of Police Commissioners and that Mark Arneson has never been among them. *See* Def. City of Los Angeles' Req. for Judicial Notice, Exs. A, B, C.

Finally, Plaintiff has not proffered any evidence demonstrating the City's ratification of conduct violating Plaintiff's federal rights. The Supreme Court has held that "when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *See St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Ratification requires, at a minimum, knowledge of constitutional violations. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Moreover, the *Praprotnik* Court emphasized that "simply going along with discretionary decisions made by one's subordinates" or failing to investigate the basis for them does not amount to delegation of authority. *Praprotnik*, 485 U.S. at 130. To find that it does would eliminate any distinction between Section 1983 liability and *respondeat superior* liability. *See Gillette*, 979 F.2d at 1348. It is a different matter, however, when a series of decisions by a subordinate manifests a "'custom or usage' of which the supervisor must have been aware." *Praprotnik*, 485 U.S. at 130. In such an instance, the supervisor can realistically be deemed to have adopted a policy formulated or initiated by a lower-ranking official. *Id.*

The Plaintiff has adduced no evidence showing that any supervisor knew of, approved, or ratified fabrication of evidence, coaxing or coercion of witnesses, suppression of evidence, or any of the other actions Arneson is alleged to have taken in violation of Plaintiff's constitutional rights. He asserted in his complaint the existence of customs and practices, including a "Code of Silence," as well as a failure to investigate amounting to "deliberate indifference" to the alleged falsification of evidence, unlawful arrests, perjury, and submission of false reports. Compl., ¶¶ 127-142. However, Plaintiff's Opposition to the City's motion for summary judgment proffers no specific evidence establishing that Arneson's actions were sanctioned by widespread custom possessing the force of law. Plaintiff does provide evidence of three instances of misconduct by Arneson of which the City allegedly was aware: (1) a jury finding that Arneson was liable for entering and "trashing" a house to execute a search warrant against a person known by Arneson to be dead (Moreno Decl., Ex. A, Arneson Dep. at 245:16 to 247:24); (2) Arneson's admission that in the 1980s, during South African apartheid, he drove an official LAPD police car displaying a South African emblem in South Central Los Angeles (Pl's. Opp'n to Def. City of Los Angeles [Proposed] Statement of Uncontroverted Facts and Conclusions of Law, Ex. A, Arneson Dep. at 254:1 to 257:25 and 265); and (3) Arneson's admission that he was disciplined in the 1990s for illegally taping a lieutenant in the LAPD (*Id.* at 269:6-25). However, Defendant Arneson was disciplined by the LAPD for the second and third of these actions, undercutting any claim of endorsement by the City, and there is no evidence offered that the City or the LAPD ratified the

9

first.  Nor does Plaintiff demonstrate that these actions, even if ratified by the City, caused his own constitutional injuries.

As Plaintiff has failed to raise a triable issue of fact as to the City's liability under Section 1983, we grant summary judgment to the City on Plaintiff's Sixth Claim.

### G.   Plaintiff's Eighth Claim: Negligence

#### 1.   Conformity with the CTCA Claims Presentation Requirements

The City alleges that Plaintiff's state law negligence claim is time-barred as he did not timely present a claim for damages to the City.  The California Tort Claims Act (CTCA) requires that a plaintiff who wishes to bring a claim against a public entity first present a claim for damages to the public entity within six months of the accrual of the plaintiff's cause of action. *See* Cal. Gov't Code § 911.2.  The issue disputed by the parties is whether Plaintiff's cause of action accrued on the date of his arrest or on the date his conviction was overturned.

The City relies, first, upon the fact that California law is clear that, in general, a cause of action for false arrest accrues on the date of the arrest.  *Mohlmann v. City of Burbank*, 179 Cal. App. 3d 1037, 1041 n.1 (1986).  Moreover, there is no requirement that the arrestee allege favorable termination of the criminal proceedings.  *Id.*  Second, the City cites to Ninth Circuit case law holding that claims against a public entity arising from an allegedly false arrest are barred by failure to satisfy the claims presentation requirements of the CTCA.  *See Ellis v. City of San Diego*, 176 F.3d 1183, 1190 (9th Cir. 1999).  However, Plaintiff does not bring a claim of false arrest based on the failure of the police to obtain a warrant – which could have been ascertained at the time of the arrest.  *See Collins v. County of Los Angeles*, 241 Cal. App. 2d 451, 456-457 (1966).  Rather, he alleges that his arrest was the result of negligent conduct in preparation of false police reports, negligent supervision, and negligent hiring on the part of supervisory officers. None of the state or federal case law cited by the City addresses the circumstance here, where the facts supporting the claim of negligence were allegedly concealed by the police.  Nor does it appear that California courts have addressed the application of the CTCA claims presentation requirements in the context of police malfeasance alleged to have been covered up.

However, we find that we need not resolve this issue as Plaintiff has failed to establish liability of the City for negligence, as discussed below.

#### 2.   The City's Liability for Negligence

Plaintiff claims that the City is liable for negligence both directly and as *respondeat superior* for Defendant Arneson and other police officer defendants "because said defendant city and supervising officers repeatedly and knowingly and negligently failed to enforce the laws of the State of California and the regulations of said defendant City and its police department" regarding arrests, police reports, and evidence.  Compl., ¶ 166.  Plaintiff also adduces evidence of

allegedly racist and unlawful activity by Arneson and argues that "Defendant City knew or should have known that retaining Defendant Arneson created the risk of malfeasance toward African American individuals." Pl.'s Opp'n at 9. Therefore, Plaintiff contends, the City is liable for the negligent retention, hiring and supervision of Arneson.

However, the California Tort Claims Act provides that a public entity is not directly liable for an injury except as provided by statute. Cal. Gov't Code, § 815(a). Therefore, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care." *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175, 1183 (2003). Neither common law tort principles nor the general tort provisions of California Civil Code § 1714 is sufficient to establish public entity liability. *Id.; see also Zelig v. County of Los Angeles*, 27 Cal. 4th 1112, 1128 (2002) (stating that the CTCA "contains *no* provision . . . providing that a *public entity* generally is liable for its own conduct or omission to the same extent as a private person or entity" (emphasis in original)). Plaintiff fails to cite a statute upon which his claim of liability is based. However, "[s]ince the duty of a governmental agency can only be created by statute or 'enactment,'" to prevail on a claim of negligence against a public entity, "the statute or 'enactment' claimed to establish the duty must at the very least be identified." *Searcy v. Hemet Unified School Dist.*, 177 Cal. App. 3d 792, 802 (1986). In fact, while California recognizes the liability of employers for negligent hiring and retention of employees, such liability is not codified in statute. *See, e.g., Federico v. Superior Court*, 59 Cal. App. 4th 1207, 1213 (1997) (*citing to Restatement Second of Agency, § 213*, and caselaw to establish employer liability for negligent retention and hiring). Therefore, Plaintiff has failed to establish the City's direct liability for negligence.

Under the CTCA, a public entity is liable as *respondeat superior* for the negligent acts of individual employees acting within the scope of their employment "if the act or omission would . . . have given rise to a cause of action against that employee." Cal. Gov't Code § 815.2(a). Public employees are liable for injuries caused by their actions or omissions to the same extent as private persons. Cal Gov't Code § 820(a). However, "the negligent employee whose conduct is sought to be attributed to the employer" must be "specifically identified." *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1113 (2004). Otherwise, the trier of fact will be unable to determine if the elements needed to assert vicarious liability have been proved. *Id.* Plaintiff has not named any specific employee whose conduct was allegedly negligent. Plaintiff's Opposition does not allege negligence on Arneson's part or on the part of any other named individual. Nor does it refer to the evidence submitted that would support such a claim. Thus Plaintiff has also failed to establish the City's liability for negligence as *respondeat superior*.

As the Plaintiff has not raised a triable issue of fact in connection with his eighth claim, we grant summary judgment in favor of the City.

### H.    Qualified Immunity

In light of the foregoing, we conclude that summary judgment is not warranted on Defendant Arneson's defense of qualified immunity. As discussed above, immunity is available to police officers when they reasonably believed in good faith that their actions were constitutional. *Pierson v. Ray,* 386 U.S. 547, 557 (1967). For an officer to be liable, the contours of the right allegedly violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. at 640. We have concluded above that there is a triable issue as to whether Defendant Arneson suppressed or fabricated evidence. No reasonable police officer could have believed that suppression or fabrication did not violate a suspect's constitutional rights. *See Devereaux v. Abbey,* 263 F.3d 1070, 1074-75 (9th Cir. 2001) (holding "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government"). Therefore summary judgment as to qualified immunity is barred because there is a triable issue of material fact.

### III.    Joint Application to File Under Seal

We grant the parties' joint application to allow Plaintiff to file under seal his oppositions to Defendants' respective motions for summary judgment..

### IV.    Requests for Judicial Notice

Defendant City of Los Angeles's unopposed Request for Judicial Notice is granted. Defendant Mark Arneson's unopposed Request for Judicial Notice is granted. Plaintiff Lavont Guillory's unopposed Request for Judicial Notice is granted.

### V.    Plaintiff's *Ex Parte* Application Re: [Proposed] Rule 15(a) Motion to Amend Complaint and Plaintiff's Motion to Amend Complaint to Add Oscar Munoz as Defendant

We grant Plaintiff's *Ex Parte* Application to file on shortened time a Rule 15(a) Notice of Motion and Motion to Amend His Complaint to Add Oscar Munoz as a Defendant. We order Plaintiff's Motion to be deemed filed September 19, 2005.

Federal Rule of Civil Procedure 15(a) declares that leave to amend "shall be freely given when justice so requires." The grant or denial of a motion to amend is left to the discretion of the District Court; however, liberality in granting such leave is recognized as consistent with the spirit of Rule 15(a). *See United States v. Webb,* 655 F.2d 977, 979 (9th Cir. 1981). Nevertheless, the Supreme Court has identified reasons that warrant the denial of a motion to amend. These include undue delay, bad faith or dilatory motive on the part of the movant; repeated failures to cure deficiencies by prior amendments; futility of amendment; and undue prejudice to the opposing parties. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). The Ninth Circuit has held that these factors "are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to

amend." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987). By contrast, prejudice is the "touchstone of the inquiry under rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.,* 238 F.3d 363, 368 (5th Cir. 2001)). The party opposing amendment bears the burden of showing prejudice. *Leighton,* 833 F.2d at 187. At the same time, we must consider the possibility of prejudice to the party to be added, as "[a]mending a complaint to add a party poses an especially acute threat of prejudice to the entering party." *Id.* at 188.

We conclude that denial of Plaintiff's motion is warranted. The motion was made more than a month after the discovery cut-off of August 8, 2005. Plaintiff endeavors to justify this tardiness by explaining that the necessity of adding Oscar Munoz as a defendant was not evident until Plaintiff's counsel located and, on September 12, 2005, interviewed Tyrone McCadney, a witness at Plaintiff's criminal trial who is now incarcerated in the Los Angeles County Men's Central Jail. Because McCadney is booked under a different date of birth than that recorded in the murder book for the Fuentes homicide investigation, Plaintiff had not been able to locate him earlier, despite diligent efforts to do so. McCadney's testimony implicates Munoz as the fabricator of a statement purported to be that of McCadney, which allegedly contributed to a finding that probable cause existed for Plaintiff's arrest. Mem. of Points and Authorities in Supp. of Pl.'s Mot. to Amend Compl. to Add Oscar Munoz as Def. (hereinafter "Mem. on Amend.") at 6:10-13; *see also* Exs. 36A and C. Plaintiff's argument is undermined, however, by one of the very exhibits he attaches to his moving papers. The Declaration of Robert Jones states that McCadney told Jones in 1993[2] that "Detective Munoz prepared a paper but he did not sign it." Mem. on Amend., Ex. B (Decl. of Robert Jones), ¶ 5. The inconsistency of Plaintiff's submissions undercuts his claim to have had good cause for not moving earlier to amend his Complaint.

More significantly, granting leave to amend will unduly prejudice the other parties to this case. It will compel the re-opening of discovery, occasion delay, and increase expenses of the other parties. Defendant City of Los Angeles has represented that it will likely defend Officer Munoz. *See* Def. City of Los Angeles' Opp'n to Pl.'s *ex Parte* Application Re [Proposed[ Rule 15(a) Notice of Mot. and Mot. to Amend. Compl. to Add Oscar Munoz at 3:22-26. As we have concluded that summary judgment in favor of the City is warranted on Plaintiff's sixth and eighth claims, granting leave to amend to add Officer Munoz would have the highly prejudicial effect of extending and complicating the City's involvement in this litigation just when it has demonstrated reason for its participation to end.

For the foregoing reasons, we **deny** Plaintiff's motion to amend.

## VI.   Conclusion

We **deny** Defendant Arneson's motion for summary judgment as to Plaintiff's first and third claims; we **grant** Defendant Arneson's motion for summary judgment as to Plaintiff's

---

[2] The appropriate date might be 2003, if one considers that Jones states earlier that he was first hired by Andrew Stein in 2003. *See* Mot. to Amend, Ex. B (Jones Decl.).

second and fourth claims. We **grant** Defendant City of Los Angeles's motion for summary judgment as to Plaintiff's sixth and eighth claims.

      We **grant** the parties' joint application to allow Plaintiff to file his oppositions under seal. We **grant** all parties' requests for judicial notice.  We **grant** Plaintiff's request to file a motion to amend and **deny** the motion.

      **IT IS SO ORDERED.**

**MINUTES FORM 11**

**CIVIL-GEN**                                  **Initials of Deputy Clerk** _____